UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENEVIEVE ELIZABETH
REYNOLDS, o/b/o J.E.C., a minor,

        Plaintiff,

v.                                            Case No. 8:22-cv-2789-AEP

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

        Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her minor child's ("J.E.C.") claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

### I.

**A.     Procedural Background**

Plaintiff filed an application for SSI on behalf of J.E.C. (Tr. 92, 369). The Social Security Administration ("SSA") denied Claimant's claims both initially and upon reconsideration (Tr. 92, 103). Plaintiff then requested an administrative

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

hearing (Tr. 169–71). Per Plaintiff's request, on August 14, 2018, Administrative Law Judge ("ALJ") Arline Colon held an administrative hearing (Tr. 66). On March 7, 2019, ALJ Scott Miller issued a decision finding that J.E.C. was not disabled (Tr. 118). On April 20, 2020, the Appeals Council remanded the case (Tr. 138). On May 20, 2021, ALJ Donald Smith held another administrative hearing (Tr. 48). On June 1, 2021, ALJ Smith issued another decision finding that J.E.C. was not disabled (Tr. 144). On January 13, 2022, the Appeals Council again remanded the case (Tr. 162). On May 18, 2022, ALJ Smith held another administrative hearing (Tr. 31). On May 31, 2022, the ALJ issued another decision finding that J.E.C. was not disabled (Tr. 11). On October 28, 2022, the Appeals Council denied J.E.C.'s request for review (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

J.E.C., who was born in September 2010, claimed disability beginning March 4, 2016 (Tr. 92, 369). J.E.C. is currently a school-aged child (Tr. 12, 369). J.E.C. alleged disability due to attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) (Tr. 479).  In rendering the administrative decision, the ALJ concluded that J.E.C. was a school-age child on May 3, 2019, the date the application was filed, and had not engaged in substantial activity since the application date (Tr. 11).  After conducting a hearing and reviewing the evidence of record, the ALJ determined J.E.C. had the following severe impairments: attention

deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) (Tr. 12).  Notwithstanding the noted impairments, the ALJ determined J.E.C. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ found J.E.C. had:

- mild limitation in understanding, remembering, or applying information;

- marked limitation interacting with others;

- moderate limitation concentrating, persisting, or maintaining pace; and

- moderate limitation adapting or managing oneself

(Tr. 14). The ALJ also determined that J.E.C. did not have an impairment or combination of impairments that functionally equaled the severity of the listings (Tr. 14).  In doing so, the ALJ found J.E.C. had:

- less than a marked limitation in acquiring and using information;

- less than a marked limitation in attending and completing tasks;

- marked limitation in interacting and relating with others;

- no limitation in moving about and manipulating objects;

- less than a marked limitation in the ability to care for himself; and

- no limitation in health and physical well-being

(Tr. 15).  In making that finding, the ALJ indicated that he considered all of the relevant evidence in the record, including objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; J.E.C.'s statements (including

statements from J.E.C.'s parent(s) or other caregivers); and any other relevant evidence in the record, including how J.E.C. functioned over time and in all settings (i.e., at home, at school, and in the community) (Tr. 15).

## II.

To be entitled to benefits, an individual under the age of 18 must demonstrate that he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. § 416.924(a). The first step requires the Commissioner to determine whether the child is performing substantial gainful activity.  20 C.F.R. § 416.924(b). If so, a finding of not disabled is warranted. 20 C.F.R. § 416.924(a) & (b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. § 416.924(a) & (c). If the child does not have a severe impairment, the child is considered not disabled. 20 C.F.R. § 416.924(a) & (c). If a severe impairment exists, the third and final step in the analysis involves a determination of whether the child has an impairment that meets, medically equals, or functionally equals a set of criteria in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.924(a) & (d).

For a child's impairment(s) to functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning

or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). A child has a "marked" limitation in a domain when the impairment(s) interferes seriously with his or her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation when the child's impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities, and the limitation is "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation is assigned only to the worst limitations but does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3)(i).

In assessing functional equivalence, the Commissioner considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)–(vi), (g)-(l). These domains represent broad areas of functioning intended to capture all of what a child can or cannot do. Social Security Ruling ("SSR") 09-1P, 2009 WL 396031, at *1 (Feb. 17, 2009). Stated simply, if a child has an impairment that meets, medically equals, or functionally equals a listed impairment, and the impairment meets the duration requirement, the child will be found disabled. 20 C.F.R. § 416.924(a) & (d)(1). Conversely, if the child does not have such impairment, or it does not meet the

duration requirement, the child will be found not disabled. 20 C.F.R. § 416.924(a) & (d)(2).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were

applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) failing to find J.E.C. met a listing; (2) failing to weigh the opinion of advanced registered nurse practitioner (ARNP) Renee St. Laurent; and (3) finding that J.E.C. had less than a marked limitation in his ability to care for himself. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.   Listings 112.08 and 112.11

First, Plaintiff argues that substantial evidence does not support the ALJ's finding that J.E.C. did not meet a Listing. Plaintiff contends that the ALJ should have found that J.E.C. had (1) an extreme limitation in the domain of interacting with and relating to others and (2) a marked limitation in caring for himself.

As briefly mentioned above, a child claimant can satisfy the third step of the sequential evaluation by showing his impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, App. 1. *See* 20 C.F.R. § 416.924(d); *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). The Listings "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 531. Claimants bear the burden of proving their impairments meet or equal a

Listing. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To "meet" a Listing, a child must actually suffer from the limitations specified in the Listing. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). To "medically equal" the limitations found in a Listing, the child's limitations must be "at least of equal medical significance to those of a listed impairment." *Id.* (citing 20 C.F.R. § 416.926). Although an ALJ must consider the Listings in making the disability determination, the ALJ is not required to recite mechanically the evidence leading to the ultimate determination. *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2017).

Here, the ALJ considered Listing 112.08 (personality and impulse-control disorders) and Listing 112.11 (neurodevelopmental disorders) (Tr. 13–14). To meet those listing requirements, an individual must satisfy the requirements of both paragraph A and paragraph B. 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00A2. The ALJ ultimately concluded that J.E.C. did not meet the requisite paragraph "B" criteria because he did not have one extreme limitation or marked limitations in two of the four domains of mental functioning (Tr. 14); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00A2b, F2.

The four domains of mental functioning are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00A2b. A limitation is "extreme" when the "impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities."

20 C.F.R. § 416.926a(e)(3)(i). On the other hand, a limitation is "marked" if the impairment interferes seriously with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i).

Plaintiff argues that the ALJ should have found that J.E.C. had an extreme limitation in interacting with others. The domain interacting with others "refers to the abilities to relate to others age-appropriately at home, at school, and in the community." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00E2. Examples include:

> Engaging in interactive play; cooperating with others; asking for help when needed; initiating and maintaining friendships; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

*Id.* Plaintiff contends that J.E.C.'s history documents a limitation in interacting with others that very seriously interferes with his ability to independently initiate, sustain, or complete activities. In support, Plaintiff cites J.E.C.'s 28 incident referral forms, 24 event and discipline reports, and 5 notices of concern (Tr. 419, 504–11, 529–49, 619–40, 643, 784, 894–901). These reports indicate instances of physical aggression, including hitting, kicking, or tackling students or staff; hitting, kicking, or throwing inanimate objects; and verbal threats (Tr. 419, 504–11, 529–49, 619–40, 643, 784, 894–901). Plaintiff reasons that if the ALJ had properly considered this evidence, then he would have found that J.E.C. had an extreme limitation in interacting with others.

Plaintiff argues that the ALJ also should have found that J.E.C. had a marked limitation in adapting or managing himself. The domain of adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00E4. Examples include:

> Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others.

*Id.* Plaintiff relies on ARNP St Laurent's opinion in asserting that the ALJ failed to find that J.E.C. has a marked limitation in adapting or managing oneself. ARNP St. Laurent treated J.E.C. on several occasions and opined that J.E.C. was markedly impaired in caring for himself (Tr. 575–76, 1206, 1208–11, 1214, 1216, 1224, 1226, 1228, 1230).[2] Plaintiff further contends that the ALJ failed to consider an abundance of evidence related to J.E.C.'s ability to care for himself. In sum, Plaintiff notes examples of J.E.C.'s frustration, defiance, and off-task behavior; verbal threats to himself and others; physical aggression, unpredictable behavior, and changes in mood; and having difficulty with personal hygiene and toileting accidents (Tr. 440, 455, 476, 553, 558–59, 561, 611, 613, 617, 625, 672, 676, 697).

---

[2] Plaintiff's claim that the ALJ failed to consider ARNP St Laurent's opinion is isolated and further explained as the second argument in Plaintiff's brief. Thus, this Court has more fully addressed it in the following section.

The ALJ first noted that J.E.C.'s treatment records show generally age-appropriate memory, recall, and concentration (Tr. 13). The ALJ cited to J.E.C.'s psychotherapy intake evaluation in January 2018, which showed that J.E.C. did not become significantly defiant and that he was described as engaged and cooperative during child led play (Tr. 13, 1133). Further, the ALJ stated that J.E.C.'s mental status examination findings demonstrated that he had fair insight and judgment, an appropriate affect, a generally euthymic mood, and intact memory (Tr. 13, 1132, 1337–38, 1340, 1343, 1347, 1355, 1364). The ALJ recognized that since Plaintiff reported concerns about J.E.C.'s disciplinary actions due to teacher and peer difficulties, subsequent telehealth sessions generally reflected mild mental status findings (Tr. 14). These findings included average eye contact, normal speech and motor behavior, appropriate thought process and content, and that he was cooperative, oriented, happy, and mostly able to make appropriate decisions (Tr. 14, 1283).

Collectively, the ALJ sufficiently considered and explained the record evidence related to J.E.C.'s impairments in finding that J.E.C. does not meet or medically equal a listing. Although Plaintiff points to several instances that may bolster the opposite conclusion, without more, Plaintiff's argument essentially invites this Court to reweigh the evidence and substitute its judgment in place of the ALJ's, of which it cannot do. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Accordingly, the ALJ's decision that J.E.C. does not meet or medically equal a listing is supported by substantial evidence.

### B.    Opinion of ARNP St. Laurent

Next, Plaintiff argues that the ALJ erred by failing to consider and weigh the opinion of ARNP St. Laurent. Plaintiff states that ARNP treated J.E.C. on several occasions and opined that J.E.C. was markedly impaired both in interacting and relating to others and in caring for self (Tr. 575–76, 1206, 1208–11, 1214, 1216, 1224, 1226, 1228, 1230).

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security Regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. To determine the severity of an impairment and how it affects a claimant's ability to work, the Regulations also allow the use of evidence from sources that are not acceptable medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2012).

Relevant here, for claims filed prior to March 27, 2017, nurse practitioners "are not acceptable medical sources, so their opinions are not 'medical opinions' and 'cannot establish the existence of an impairment.'" *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363

F.3d 1155, 1160 (11th Cir. 2004)). Notably, because nurse practitioners are not acceptable medical sources, their opinions are not entitled to substantial weight. *Id.* But "[s]ince there is a requirement to consider all relevant evidence . . . the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources[.']" Social Security Ruling 06-03p, 2006 WL 2263437 (Aug. 9, 2006). Given this, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*; 20 C.F.R. § 416.927(f)(2).

In arguing that the ALJ's decision is not supported by substantial evidence, Plaintiff relies on ARNP St. Laurent's opinion that J.E.C. was markedly impaired both in interacting and relating to others and in caring for self (Tr. 575–76). In the record, this opinion consists of two checked boxes in those categories[3] (Tr. 575–76). Because Plaintiff's application was filed in 2016 (Tr. 192, 369), ARNP St. Laurent is not an acceptable medical source, and thus, the opinion "cannot establish the existence of an impairment." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160

---

[3] To the extent the checked boxes are an opinion, "[a] doctor's opinion on dispositive issues reserved to the Commissioner, such as whether the claimant is disabled or unable to work, is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source, but the ALJ should still consider the opinion." *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 834 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527(e)); *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (stating "courts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

(11th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)). However, medical evidence from ARNP ST. Laurent may be used to show the severity of J.E.C.'s impairments. *See* 20 C.F.R. § 416.927(f)(1). Although Plaintiff correctly identifies that the ALJ did not discuss or weigh ARNP St. Laurent's opinion by name, this Court finds no reversible error and cannot conclude that the ALJ overlooked the evaluation.

The ALJ's discussion of the medical evidence in the record is extensive (Tr. 14–22). The ALJ initially acknowledged several of Plaintiff's complaints from the hearing testimony and the disability report (Tr. 16). The ALJ stated that from the disability report Plaintiff alleged J.E.C.'s ADHD is disabling, and he cannot focus, pay attention, follow directions, and obey the rules of classroom (Tr. 16, 405). Additionally, Plaintiff alleged that J.E.C. lacks the ability to control his impulses and regulate his emotions but generally gets along with others (Tr. 16, 449–53). The ALJ noted Plaintiff testified that J.E.C. has difficulties with inappropriate language, temper outbursts, and verbal and physical aggression but that his medication improves such behavior (Tr. 16, 36–38, 40–41).

The ALJ noted J.E.C. medication history where he initially received Quillivant but transitioned to Risperdal, which ultimately stabilized his ADHD symptoms (Tr. 16, 1013). The ALJ also noted that J.E.C. began receiving specialized services at school as designed by his individualized education plan (IEP) in September 2015 (Tr. 16, 519–21). The ALJ then thoroughly reviewed J.E.C.'s reported school incidents between 2016 and 2021 (Tr. 16–19). As a whole, the ALJ

noted that there was an abundance of incidents related to verbal and physical aggression towards peers and supervisors but that marked improvement in J.E.C.'s behavior coincided with compliance in taking his medication (Tr. 16–19). The ALJ explained how J.E.C.'s IEP was adjusted over time to meet his needs and help improve his behavior, including necessary modifications to manage challenges presented by the COVID-19 pandemic (Tr. 18–19).

The ALJ then discussed the medical opinions of Deborah Carter, Ph.D., Nicole Mannis, Psy.D., and Jessica Gutierrez-Santiago, M.D. (Tr. 20). On November 2, 2016, Deborah Carter, Ph.D., the state agency consultant, determined that J.E.C. had no limitation in acquiring and using information, less than marked limitation in attending and completing tasks, marked limitation in interacting and relating with others, no limitation in moving about and manipulation of objects, less than marked limitation in caring for self, and no limitation in health and physical well-being (Tr. 20, 96–97). Later, on January 28, 2017, Nicole Mannis, Psy.D. determined that the claimant had less than marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving about and manipulation of objects, less than marked limitation in caring for self, and no limitation in health and physical well-being (Tr. 20, 108–09). The ALJ found that both opinions were entitled to some weight since they are supported by the record evidence but recognized that they were several years old (Tr. 20). The ALJ afforded great weight to Jessica Gutierrez-Santiago, M.D., an impartial

pediatric medical expert, who opined in April 2021 that the severity of J.E.C.'s impairments does not meet a listing (Tr. 20, 1328). Further, Dr. Gutierrez-Santiago opined that the claimant has less than marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, marked limitation in interacting and relating with others, no limitation in moving about and manipulation of objects, less than marked limitation in caring for self, and no limitation in health and physical well-being (Tr. 20, 1331–32). Of note to this appeal, the ALJ did not explicitly state but cited the exhibits (Ex. 19E, 12F, 13F) containing ARNP St. Laurent's records and opinion several times, notably in detailing one of the teacher's assessments and in reviewing J.E.C.'s reported school incidents between 2016 and 2021 (Tr. 17–18, 21).

The ALJ lastly considered the opinions of J.E.C.'s school administrator Brad Porinchak and teachers Miriam Boden, Patricia Casey, and Jocelyn Brantly (Tr. 20–22). The ALJ noted that Ms. Boden's opinion reported a slight problem comprehending oral instructions, slights problems with attending and completing tasks, slight problems in interacting with others, a few problems with manipulating objects, and slight problems in caring for self (Tr. 20, 408–15). Overall, the ALJ noted that Ms. Boden's opinion provided insight as to J.E.C.'s behavior at the time his mother filed for disability benefits (Tr. 20–21). Mr. Porinchak, a school administrator, reported that J.E.C. is disruptive in the classroom, threatens others, and shows no remorse, but he is smart and talented and can be very sweet and pleasant (Tr. 21, 557). The ALJ afforded this opinion little weight because Mr.

Porinchak did not interact with J.E.C. on a daily basis and the interactions Mr. Porinchak did have with J.E.C. were when he experienced behavioral problems (Tr. 21). The ALJ noted Ms. Casey's opinion detailed very severe behavioral issues, including:

> slight problems in acquiring and using information, but he does not work well with peers or participate in class discussions; he has serious/very serious problems with completing his schoolwork, organizing, and working at a reasonable pace without distracting others; he has a very serious problem in interacting with others as he is frequently removed from the classroom due to his behavior; he has no problems moving about and manipulating objects; and he has very serious problems in regulating his emotions

(Tr. 21, 471–78). However, the ALJ only gave this opinion some weight because Ms. Casey's notes aligned with a period in which J.E.C. was not compliant with his medication, a trend that the record reflected significant impact on J.E.C.'s behavior (Tr. 21). Ms. Brantly's opinion offered similar behavioral concerns as Ms. Casey's opinion (Tr. 21–22). As such, the ALJ likewise afforded the opinion some weight but noted that the record demonstrates J.E.C.'s non-compliance with his medications at that time (Tr. 21).

Though the Regulations indicate that the ALJ "generally should explain the weight given to opinions from these 'other sources,'" the ALJ may also "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–03p. In this case, while it would have been helpful to this Court for the ALJ to explicitly address ARNP St. Laurent's evaluation and indicate the weight given to it, this Court is

satisfied with the ALJ's treatment of ARNP St. Laurent's opinion. *Voronova v. Astrue*, 3:11–CV–709–J–32JBT, 2012 WL 2384414, at *2 (M.D. Fla. May 7, 2012), *adopted by* 3:11–CV–709–J–32JBT, 2012 WL 2384044 (M.D. Fla. June 25, 2012) (where the ALJ's opinion extensively discussed other evidence in record, failure to mention opinion of "other source" was not reversible error, as substantial evidence supported the ALJ's decision to essentially afford no weight to the opinion).

The ALJ focused on the objective evidence, J.E.C.'s treating history, the opinions of several doctors, and the other factors explained in the decision, including multiple record citations to ARNP St. Laurent's examinations. *Zawatsky v. Comm'r of Soc. Sec.*, No. 6:13-CV-1976-ORL-18, 2015 WL 179284, at *5 (M.D. Fla. Jan. 14, 2015) (finding that an ALJ's discussion of "other source" medical evidence was sufficient when specifically noting the exhibit without referencing the source by name). Thus, this Court is able to follow the ALJ's reasoning and determine that explicit analysis of ARNP St. Laurent's evaluation was not necessary as it was essentially afforded no weight. *See Voronova*, 2012 WL 2384414, at *2. Accordingly, any error is harmless, and the ALJ's decision regarding ARNP St. Laurent's opinion is supported by substantial evidence.

### C.    Functional Equivalence of a Listing

Lastly, Plaintiff argues that the ALJ erred by finding that J.E.C. did not functionally equal a listing. Plaintiff contends that the ALJ should have found J.E.C. had at least a marked limitation in the domain ability to care for yourself and subsequently determined that J.E.C. functionally equaled a listing.

In determining whether an impairment, or combination of impairments, functionally equals a listing, the adjudicator must assess the child's functioning in the following six broad functional domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitations in two domains, or an "extreme" limitation in one domain, the child's impairment(s) is functionally equivalent to a listed impairment. *Id.* § 416.926a(d). A claimant has a "marked" limitation if his impairment interferes seriously with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). For each domain, the regulations make clear there is a range of development and functioning, and not all children within an age category are expected to be able to do all the activities. *Id.* § 416.926a(b)(1).

Here, in analyzing these six domains, the ALJ found that J.E.C. had no limitations in moving about and manipulating objects and in health and physical well-being (Tr. 15). The ALJ further found that J.E.C. had less than marked limitations in acquiring and using information; attending and completing tasks; and in the ability to care for himself (Tr. 15). The ALJ found that J.E.C. had a marked limitation in interacting and relating with others (Tr. 15). Because the ALJ did not find at least two "marked" limitations, or one "extreme" limitation, the ALJ found that J.E.C. did not functionally equal a listing (Tr. 14–22).

Plaintiff argues that the ALJ erred in finding that J.E.C. had less than a marked limitation in the ability to take care for himself. Specifically, Plaintiff contends that the opinion of ARNP St. Laurent and the following recorded incidents support a finding that J.E.C. has a marked impairment for caring for himself:

> [R]eports of urinary problems (Tr. 519, 617, 1103, 1128–29, 1130), threats of or references to killing himself or wanting to die or wishing he wasn't born (Tr. 611, 613, 614, 672, 1277), banging his head against the wall or desk (Tr. 544, 625, 676, 921, 1277), kicking the wall (Tr. 548), crashing into or banging on walls (Tr. 544, 675–76), stabbing himself with a pencil (Tr. 676), refusing to flush the toilet (Tr. 476), and biting his knee (Tr. 1277). J.E.C. had problems using good judgment regarding personal safety and dangerous conditions (Tr. 409–13, 473–76), is a threat to himself and staff (Tr. 697), self-harm was a big concern (Tr. 695–96), and he waved his chair or belongings around which is unsafe for himself and others (Tr. 675–76).

The domain of caring for oneself considers how well the child maintains a healthy emotional and physical state, including how well he can get his physical and emotional needs met in appropriate ways, how he can cope with changes in his environment, and whether he can take care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). School-age children (ages six to twelve) should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although they may still need to be reminded sometimes to do these routinely. *Id.* § 416.926a(k)(iv).

Here, the ALJ found J.E.C. had a less than a marked limitation in this domain (Tr. 15). As demonstrated above, the ALJ conducted a very detailed review of the objective medical evidence, including sufficient consideration of ARNP St.

Laurent's opinion (Tr. 14–22). Relevant to this argument, the ALJ highlighted that Plaintiff reported J.E.C.'s problems were mostly handling his emotions, verbal and physical aggression, and temper outbursts (Tr. 16, 70–71). However, Plaintiff testified that J.E.C. was mostly independent in his daily activities but occasionally needed a few reminders (Tr. 16, 42–43, 61–62). The ALJ noted that reports from Plaintiff and J.E.C.'s teachers indicated that he was able to take care of his own toileting needs, get dressed and undressed without supervision, and understood that hot is dangerous (Tr. 16). After reviewing J.E.C.'s school disciplinary record, the ALJ determined that J.E.C.'s behavior improved when he was compliant with his medication and used his coping strategies (Tr. 19). Further, the ALJ found that J.E.C. continued to work at or above his grade level, was generally engaged in his therapy sessions, had no physical limitations, was well groomed with a neat appearance, and continued to work on his coping skills (Tr. 19). With regard to the medical evidence, the ALJ considered and weighed the opinions of Deborah Carter, Ph.D., Nicole Mannis, Psy.D., and Jessica Gutierrez-Santiago, M.D. (Tr. 20). All three doctors opined that J.E.C. had a less than marked limitation in caring for oneself (Tr. 20, 97, 109, 1332).

In light of the ALJ's thorough discussion of J.E.C.'s self-care related reports and medical evidence, Plaintiff's argument is unavailing. Plaintiff cites to several cases that are both inapplicable to the facts of this case and outside of this district. Additionally, Plaintiff merely lists a string of incidents that show J.E.C.'s behavioral difficulties but does not draw out any legal argument as to why the ALJ erred by

finding that J.E.C. had a less than marked limitation in the ability to take care for himself. Without more, Plaintiff's argument that the ALJ did not properly consider the record essentially invites this Court to reweigh the evidence and substitute its judgment in place of the ALJ's, of which it cannot do. *Bloodsworth*, 703 F.2d at 1239. Accordingly, the ALJ's decision that J.E.C. does not functionally equal a listing is supported by substantial evidence.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 12th day of March, 2024.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

22